MÉNDEZ & COMPANY, Plaintiff and Appellee, *v.* JULIO L. BUSÓ, Defendant and Appellant.

No. 5597.   Argued April 28, 1932.—Decided December 24, 1932.

*R. A. Arroyo Ríos* for appellant.   *Monserrat & Monserrat* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Méndez & Co., a commercial partnership domiciled in San Juan, and Julio L. Busó, a farmer in Humacao, entered into a contract whereby the latter sold the former sixty-five thousand coconuts at twenty-one dollars and fifty cents per thousand.

Claiming that the coconuts were not delivered, Méndez & Co. sued Busó for $1,087, costs, expenses and attorney's fees. The amount claimed is made up of $108, value of empty bags furnished, $30 paid for dead freight, $400 advanced on account of the price of the coconuts, $249 spent in picking and stripping them, and $300 damages.

The defendant in his answer admitted only the first allegation of the complaint, relative to the parties, and denied all the others. He filed a cross complaint wherein he in

turn claimed from the plaintiff $997.50, balance of the price of the coconuts which he sold it, $2,280 for loss of coconuts maliciously attached by plaintiff, and $25,000 for damages caused by the suit brought against him by the plaintiff; altogether $33,277.50, plus costs, expenses, and attorney's fees.

The contract of sale was verbal. The plaintiff maintains that it was agreed that the delivery of the coconuts was subject to its orders; that on September 6, 1928, it accordingly ordered that picking and stripping be commenced, for delivery on September 17, and that although it complied on its part with all the terms of the contract, the defendant, on flimsy pretexts, refused and refuses to deliver the fruit which he sold to the plaintiff. And the defendant maintains that he sold the coconuts in question to the plaintiff, and the latter accepted delivery and requested him to permit the coconuts to remain where they were heaped, to be removed at any time, that at this stage there occurred, on September 13, 1928, the hurricane of San Felipe, which caused the loss of the fruit. In brief, the plaintiff claims that delivery was not effected, and defendant alleges that delivery was made and the coconuts lost after they became the property of the plaintiff.

The case went to trial. Oral and documentary evidence was produced by both parties, and the court, relying principally on the latter, rendered judgment for the plaintiff for the sum of $651. It eliminated the claim for the value of the bags, and for damages, and part of what was alleged as having been spent in picking and stripping the coconuts. The cross complaint was dismissed.

The defendant appealed, assigning three errors in his brief, the first in the weighing of the evidence, the second in the admission as evidence of a certain document, and the third in the dismissal of the cross complaint.

The first error assigned was not committed. Nor was

the third. The second was. Our reasons for arriving at these conclusions, briefly stated, are as follows:

We have already referred to the allegations on which the plaintiff's claim is based, and have stated how defendant resists the claim, and in turn attacks. Let us see what the evidence shows.

The first witness for the plaintiff was its partner Francisco Guerra. When he finished, counsel for both parties stipulated that Emiliano Méndez would testify:

"That Méndez and Company, of which he is managing partner, executed a contract with Mr. Julio L. Busó for the sale of SIXTY FIVE THOUSAND coconuts at TWENTY-ONE DOLLARS AND FIFTY CENTS per thousand, on an average, the delivery of the coconuts to be subject to the orders of Méndez and Co., and that in due course Méndez and Co. required him to deliver the said coconuts and they were not delivered."

The above stipulation also sums up Guerra's testimony. It presents the testimony of the plaintiff with respect to the terms of the verbal contract which was made.

The defendant's personal testimony at the trial was as follows:

". . . . that the contract was made early in August, and that from that time the coconuts were at the risk of the buyers; that he never sold his coconuts except on that condition; that the price agreed upon was TWENTY-ONE DOLLARS AND FIFTY CENTS per thousand coconuts proper for shipment, the cost of stripping being for the account of the seller, but all other expenses, beginning with the grading of the coconuts, labor for bagging them, and trucking expenses to San Juan, being for the account of Méndez & Co. That it was a special condition that Méndez & Co. should remove the coconuts within a few days, by few days being meant the usual period of from six to eight days; that since the contract was made the first half of the month of August, the witness thought they would remove the coconuts from the fifteenth to the twentieth of August, but that, while awaiting the extensions of time that were requested, and the date on which Mr. Francisco Guerra agreed to come. to the farm, the time passed without their calling for the coconuts."

And the defendant produced the testimony of Luis Pereyó to show the customs of the place regarding this class of contracts. The witness said:

" . . . . that as such coconut grower, he is familiar with the customs and usages in the sale of coconuts; that the usual thing in the business for one who is going to buy coconuts is that, once the price is agreed upon, the owner of the farm proceeds to pick his coconuts, and heap them, and then he engages people to strip them, and immediately after this the buyer of the coconuts should come to the farm to remove them."

Let us now see what the documents state.

The first writing we find is a check for $200, dated August 11, 1928, drawn by the plaintiff in favor of the defendant, on account of the purchase price.

Next is a letter dated August 15, from the plaintiff to the defendant, which states:

" . . . . With reference to the preparation and shipping of your coconuts, we take pleasure in advising you that it was our intention to prepare them next week, but not having received a shipment of bags which we have ordered in New York, it is impossible for us to do so until the said bags arrive, since our stock on hand is not sufficient for the quantity of coconuts which you have. It is very probable that their preparation will be under way before the end of this month, and we should appreciate your informing us as soon as possible. more or less what your total production will be, in order to know the number of empty bags which we must order. Awaiting your reply, we are . . . . "

To this the defendant replied on August 17 as follows:

" . . . I am pleased to reply to your kind letter advising you that the total of the coconuts may reach sixty thousand. Awaiting your advices, I am . . . "

On August 23, Guerra wrote to the defendant:

" . . . I have been waiting for you until after three, and I have had to leave. Today I ordered 500 bags sent directly to your farm. Next week I expect to begin the stripping of your coconuts; but it will be toward the middle of the week. I shall let you know in advance when you should begin. Greetings, . . . "

On August 25, the defendant advised the plaintiff:

" . . . I have received no letter from you to which I might refer, and simply wish to advise you that I have an option on some fifty thousand coconuts of Central Fajardo, on one of this company's farms in Luquillo, and more or less forty thousand within a few weeks. This company has been selling its coconuts to Mr. Biascochea for a long time, and its custom is to sell the coconuts 'on the tree', that is, all expenses from felling and picking until shipment for the account of the buyer. My friend Guerra should be quite familiar with the yield and quality of Luquillo coconuts, as well as with the cost of picking, stripping, etc., in that region. The man in charge of the sale of the coconuts is related to me, and wishes to close the sale next week. Let me know the maximum limit that you can offer, to see whether I can make the purchase for you, for in this case it seems to me I should not have difficulty in prevailing over competitors. Yesterday, while I was in town, a truck delivered a shipment of empty bags at my farm, without leaving me a letter, voucher or other document showing the origin of the bags. I suppose they are yours, and I have them under cover. Awaiting your advice in order to commence the stripping of the coconuts I have sold you, I remain . . . "

On August 29, the plaintiff replied to the defendant thus:

" . . . Just after your telephonic conference with Mr. Guerra yesterday we received such a discouraging cable with reference to the coconut business that we have decided to wait for the passing of a few days of the month of September before proceeding to the stripping of your coconuts, for the condition of the market is such as not to permit us to ship them early in the month. If in the meantime you should need any amount on account of the said coconuts, you know that this firm can let you have it. With reference to the Central Fajardo coconuts, the coconut market is so problematic this year that all the buyers are hesitating to make purchases, counting on better prices in the future. Nevertheless, our offer of $20 on the trees holds goods until you let us know the result of your efforts. As we have indicated before, as soon as we decide to strip your coconuts, we shall notify you two days in advance. Awaiting your advices on the matter we remain . . . "

The following letter is also from the plaintiff to the defendant. It bears date of September 6 and says:

" . . . We have the pleasure of advising you that Guerra expects to ship your coconuts on the steamer sailing Monday, September 17, for which reason we request that you begin stripping the said coconuts on Tuesday of next week. Guerra will try to be at your farm to bag them and grade them two days after the stripping has begun, that is, on Thursday. Guerra would appreciate your having ready a few boys of those who know how to grade and are quickest in the work, so that when he arrives he will not lose time looking for them; also 3 or 4 men able to fill and weigh the bags. We anticipate our thanks for the good attention you may give this letter, and remain . . . "

Independently, the defendant wrote to the plaintiff on September 7 as follows:

". . . . I should appreciate your lending me the sum of Two Hundred Dollars, on account of the coconuts which I sold you and for which you have not come. I should very much appreciate your taking delivery of these coconuts as soon as possible, for the longer they stay on the ground, without stripping, the more of them will be sprouting on the day of the stripping, and this prejudices me . . . "

The plaintiff replied on the 11th as follows:

" . . . We received your kind letter of the 7th of this month in due course, and had not replied before because we had been waiting for Mr. Guerra, but since he has not yet arrived from the island, we have decided to send you the enclosed check to your order, for $200, leaving the balance of the contents of your letter pending until Mr. Guerra arrives, which should be tomorrow or the day after. Please pardon this short delay, and we reiterate . . . "

On September 13 occurred the tremendous hurricane of San Felipe, and on the 17th the defendant wrote to the plaintiff:

" . . . In order to gather again the coconuts I sold you and which the cyclone scattered, I have to do considerable cleaning out, aside from rebuilding the small houses and huts for the laborers, and now all of this costs double, if one wants someone to do the

work. I should appreciate your advancing me $500 on account of the said coconuts, in order to begin this work immediately, to see whether I can deliver the coconuts within the shortest time . . . ''

On the 25th of the same month, he again wrote to them as follows:

'' . . . In gathering the coconuts on my farm it turns out that, counting those felled by the cyclone, the total of dry coconuts that may be stripped and shipped amounts to more than eighty thousand, and very probably will exceed ninety thousand, if I do not set many aside for seed. Those which show that they have probably sprouted or are about to sprout I shall not allow to be stripped, for since you will not take these, and I can not lose them, it is very convenient to me to leave them for seed; since I had sold you sixty-five thousand coconuts more or less, as per my verbal advice to your Mr. Emiliano Méndez, it turns out that there is no agreement regarding price and conditions with respect to the balance, or excess over those that had been picked. In view of this, I should appreciate your making me an offer for these coconuts, either unstripped, or stripped at my expense and delivered at the entrance to my farm. If you deem it convenient, make me an offer for the total amount of coconuts picked up to day, or tomorrow, when the picking will end, it being understood that those which are too dry and have lost their crowns and it is evident that they have sprouted or are about to sprout, are mine and are not included in the sale, since I need them for seed. If you make this offer for the total, it should be understood that all expenses, from picking to stripping, etc., etc., are for your account. Awaiting your advice within the shortest possible time, I remain . . . ''

This last letter was answered by the plaintiff on September 28 as follows:

'' . . . We refer to the contents of your esteemed letter of Sept. 25, advising us that after delivering to us the 65,000 coconuts which you have sold us, you will have a balance of from 20 to 25,000. We are not making an offer today for this amount in excess of our purchase because Mr. Guerra is not here, but you know that we have always arrived at an understanding with you, and we do not expect to meet the slightest difficulty in closing this deal with you so that you will not have to deliver your total production to two different firms, and therefore at the first interview between you and ourselves we shall try to arrive at an agreement with respect to the 20 or

25,000 coconuts which you will have left after delivering the 65,000 we contracted for. They are asking us up North for the date on which we can ship the total which we have bought from you, and since it is necessary that we cable them the date on which the goods are to leave here, we beg you to write us by return mail advising us of the date on which you can begin to strip, so that Mr. Guerra can go to Humacao to bag the goods and ship them here . . . ''

Three days later, a stranger intervened and addressed the following letter to the defendant:

''San Juan, Puerto Rico, October 1, 1928. Mr. Julio Busó, Humacao, Puerto Rico. My dear Sir and friend: I hereby offer you $24.00 per thousand, delivered on your farm where they are now located, for all the coconuts which you have not yet contracted for and can deliver to me. This offer will stand for forty-eight hours. Yours affectionately, (Sdg.) Enrique Biascochea.''

On October 3, the defendant wrote to the plaintiff thus:

'' . . . I have just received your letter of the second of this month, to which I refer. I must make clear to you: FIRST: I never sold you coconuts on the understanding that they would remain in my care for an unlimited time, waiting while the market price for this fruit should improve. SECOND: The 65,000 coconuts which I sold you in August, early in the month, were to have remained on my farm for a few days, while Guerra found time to come and receive them, and if the cyclone caught them before they were delivered to you this was because you preferred to continue awaiting an improvement in the price, as you state in the letter you wrote me. THIRD: I never told you or anyone that I would take the loss on the coconuts which were stripped pursuant to your orders in the days before the storm, and which were lost because the storm swept them away or because the sun cracked them after the cyclone had uncovered and scattered them. You ask why I had not taken a position along this line when I was in your office, and I must answer you: Because I had been relying on your good faith and thought you would remember everything that I have had to point out in my last letters, and also because I thought that you would know how to take your own losses, and not pretend to have me lighten them. I never was very much pleased with the lack of confidence which you showed in sending Guerra to order work on my farm, and for this reason I supposed that you were holding something from me, very quietly so that, without telling me so clearly in plain

language, you could make me take the loss or take the matter for collection through the channels open to those who can pay a lawyer. While on this point I should tell you that the laborers who worked on my farm at Guerra's request, doing what he ordered, need their wages, and intend to submit him to the action of justice if he does not come to pay them. You say that shipment of the 65,000 coconuts is being demanded of you, and now I do not know whom to believe, since Guerra told me that the order for the coconuts had been cancelled by cable, and that you would have to lose money or sell them cheap. I regret very much having to say to you what this paragraph contains, and I regret it not on your account but on my own: If you believe that the coconut business is as you say, and that I have to deliver the 65,000 coconuts and return you the $400 which you had advanced me, I believe that you have to take the loss on the coconuts which had been stripped and which were lost for the reasons I have so many times repeated, and if you do not agree, then you can try judicial action against me; perhaps you can obtain a favorable judgment to comfort you in your losses, for I have nothing with which to comfort you . . . ''

Plaintiff's letter to the defendant, dated October 2, referred to in the letter of the defendant which we have just copied, does not appear in the record.

The record shows that after the hurricane the plaintiff engaged Agustín Murat to gather the coconuts, and paid him up to a total of $221, in three parts, before the work was suspended by order of the defendant, transmitted by his employee Julio Rivera. No fruit was taken from the farm by the plaintiff. It seems convenient to copy the following from the testimony of witness Murat:

"On cross-examination by counsel for the defendant, this witness stated: That Mr. Francisco Guerra gave him orders to gather some coconuts on the farm of Mr. Julio Busó; that he received these orders after the San Felipe cyclone; that Mr. Guerra told him that the gathering of those coconuts would be paid by the firm of Méndez & Co. and for this reason the witness understands that the coconuts must have been for them; that he can not say how many coconuts he gathered, because the witness was working by the day; that Mr. Busó's farm is very large and they would make a heap anywhere and he can not state the quantity of coconuts gathered;

that some of the coconuts were good and some were bad, and that he found some coconuts stripped and broken; that there were many spoiled coconuts; that there is a swamp near the farm, and there were many coconuts in the swamp, but that he could not make an estimate of the number of coconuts in the swamp because he did not count them and it is a large swamp; that during the San Felipe cyclone the sea broke into Mr. Busó's farm and reached the swamp . . . . that due to the fact that the coconuts had been stripped before the cyclone and were covered with palm leaves and husks and the wind of San Felipe blew away the leaves and husks, and the water coming in over the flats swept up the coconuts and scattered them over the farm and no heaps were left. That the witness knows that before the San Felipe cyclone there were stripped coconuts on Mr. Busó's farm, but he can not say how many except that there were many stripped coconuts and they were covered with palm leaves and husks; that the heaped coconuts were scattered over the farm by the wind and the water, and the sun cracked them, for once coconuts are stripped they can not be left out in the sun even for two hours, otherwise they crack.''

Except for the statements of the defendant while he testified at the trial and in his letter of October 3, 1928, there is no evidence in the record as to the fact whether the contracting parties agreed that after the execution of the contract the coconuts should be for the account and risk of the buyer. The testimony produced by the defendant as to so-called local custom does not support his statement. His own evidence showed, moreover, that no fixed rule existed, and that sales were made in different ways, as in the case of the Central Fajardo palm groves. Of course, if the buyer had refused to accept delivery of the coconuts, without a justified motive, after their stripping was ordered, its responsibility would be clear, but that is not really the case here.

The evidence shows that the contract was executed as follows: purchase of sixty-five thousand coconuts at $21.50 per thousand, the seller paying the expenses of felling and stripping, and the buyer those of grading, delivery and bagging, and transportation from the farm.

When should the coconuts sold be considered as delivered? In our judgment when, after being stripped, they were selected and received by the purchaser. Then title would definitely pass to the buyer.

When the contract was executed early in August, 1928, did the parties fix the exact date of delivery? In our opinion they did not. Such being the case it is to be inferred that the term for delivery should be a reasonable one, guaranteeing the rights of both parties.

The correspondence between the parties reveals that the buyer kept delaying receipt of the coconuts, undoubtedly to suit its own convenience, but always after communicating with the seller, who expressly or implicitly accepted the delay, although trying not to have it extend unduly.

September 6 finally arrived, and the buyer advised the seller that it intended to ship the coconuts on the seventeenth, requesting him to begin stripping on *Tuesday* of the *following week,* that Guerra would try to be at his farm two days after the stripping had commenced, that is, on *Thursday.*

In accordance with this letter, there is no doubt that the seller could have begun, and he seems to have begun, his work on Tuesday, but the number of coconuts which he actually stripped can not be ascertained. Did the buyer perform by sending Guerra on Thursday? The calendar shows that that Thursday was September 13, date of the terrible San Felipe hurricane. Due to an act of God, the buyer could not have fulfilled his promise even had he wished to do so.

What were the consequences of the disaster in relation to the coconuts, and what was the reaction of the parties with reference to their respective obligations?

The wind, the rain, and the sea must necessarily have caused the loss of thousands of fruit, but there is no exact information, and from the defendant's own letters it appears that the principal damage consisted in the scattering of the coconuts over the farm. The practice is to heap them, and

the heaps were destroyed, the coconuts being dispersed to different places.

"In order to gather again the coconuts I sold you and which the hurricane scattered, I have to do a considerable cleaning out," the seller tells the buyer on September 17, and asks it to advance him five hundred dollars on account of the purchase price, for he had to rebuild the small houses and huts and everything cost double, and shortly thereafter he advises the buyer that the coconuts which had been gathered would probably exceed ninety thousand, and suggests that it purchase the excess.

It is clearly inferred from these statements that the seller acknowledged that delivery had not been made, and that he considered himself bound to make it, and was preparing to do so.

Consistent with this attitude of the seller is that of the buyer, which attended to the gathering of the coconuts itself, and spent the sum of $221 for it.

When did the difference of opinion between the two arise? This does not clearly appear. Perhaps the buyer should have been more considerate to the seller, bearing in mind that if it had not, delayed acceptance of delivery so long, delivery would have been made before the hurricane, and perhaps it should have agreed to pay all or part of the expenses of the new gathering and heaping, and the changed attitude of the seller may be attributed to this conduct on the part of the buyer; perhaps what moved the seller to adopt this attitude was Biascoechea's letter offering to pay a few dollars more per thousand coconuts which he might sell him. Nothing can be said with certainty. Limiting ourselves to the evidence, we must acknowledge that the coconuts were never delivered prior to the hurricane, and that, although the seller had the opportunity of making delivery afterward, and acted during the first few days as though he

were ready to do so, he later refused to do so without a justified motive.

That being so, the judgment against the seller for the four hundred dollars received on account of the purchase price, and the two hundred and twenty-one dollars spent by the plaintiff in gathering the coconuts, is just and proper.

The first error assigned does not, therefore, exist.

The second error assigned goes to the admission in evidence of a certain document signed by Pedro Mulero, as master of the sloop "Carmen María," acknowledging receipt of a certain sum paid him by the plaintiff as dead freight, and stating that the sloop was chartered by the plaintiff to load three hundred bags of coconuts at defendant's farm, which he could not do because the freight was not ready.

The defendant objected because the document was not the best evidence, and was hearsay. Mulero did not appear.

This was not a mere receipt. It was produced for the purpose of attempting to prove facts which, if true, would show that the defendant had not complied with the contract. And such facts could not be established in that fashion. The person who prepared and signed the document should have been called as a witness, and defendant given an opportunity to cross-examine him.

Moreover, after studying all of the evidence on the point, the existence of this item of expense seems to us doubtful. The item should be eliminated.

As to the third and last assignment of error, no effort is necessary to conclude that it does not exist, after what has been said in the discussion of the first assignment. The seller has no right to claim the purchase price of the goods sold from the buyer, since he could have delivered and did not do so, nor is he entitled to the extraordinary amount of damages claimed; for the attachment levied by the plaintiff on the coconuts existing on his farm, to secure the effectiveness of the judgment to be rendered in this case, was valid and not malicious.

The judgment appealed from must be modified in the sense of striking out the item of thirty dollars for dead freight, and thus modified, affirmed.

Mr. Justice Wolf, concurring.

It is my idea that before the cyclone no duty of delivery of the coconuts fell on the defendant vendor. The proof was clear that up to that time the delay, as shown by the correspondence, was entirely due to the request of the plaintiff purchaser. The vendor was temporarily relieved of the necessity of delivery. The delay in delivery, although consented to, was in my opinion at the risk of the purchaser. The possibilities connected with this delay are complicated, e. g., see 55 C. J. 469, and I do not pretend to determine what would have been the consequences if the vendor had insisted upon a performance in accordance with the agreement of the parties. In reality the vendor did not stand on his rights and apparently took no steps to deliver what he could or what remained as a result of the cyclone. The coconuts that remained were not stripped and heaped ready for delivery. Indeed the evidence tended to show that the vendor refused to deliver or abandoned any thought of delivery to the purchaser. He apparently had another plan in mind.